E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JEREMY K. BEECHER (Cal. Bar No. 301272)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5429
     Facsimile: (213) 894-0141
     E-mail:    jeremy.beecher@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:23-117-DMG |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | Hearing Date: September 26, 2023 |
| MIHAI CRISTEA, | Hearing Time: 11:00 a.m. |
| Defendant. | Location: Courtroom of the Hon. Dolly M. Gee |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Jeremy K. Beecher, hereby files its sentencing position regarding defendant MIHAI CRISTEA.

///
///
///
///
///
///

The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report and Sentencing Recommendation, and any other evidence or argument that the Court may permit.

Dated: September 22, 2023          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


   /s/
JEREMY K. BEECHER
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant traveled to the United States to commit fraud. Shortly after defendant illegally entered the country, law enforcement arrested him at a Citibank ATM in Los Angeles after he fraudulently withdrew $3,980 in funds from Electronic Benefit Transfer ("EBT") accounts belonging to low-income Californians.  For this, the government respectfully recommends that the Court sentence defendant to a mid-range Guidelines term of ten months' imprisonment; a five-year term of supervised release; $3,980 in restitution; and the mandatory $200 special assessment.

**II.  PROBATION'S RECOMMENDATION**

On July 11, 2023, defendant pled guilty to one count of bank fraud in violation of 18 U.S.C. § 1344(2) (Count 4) and one count of unlawful use of unauthorized access devices in violation of 18 U.S.C. § 1029(a)(2) (Count 6), pursuant to a plea agreement filed with the Court on July 11, 2023.  (Dkt. 29 ("Plea Agreement").)  In the Plea Agreement, defendant agreed that a custodial sentence of no less than six months is appropriate.  (Id. ¶ 17.)

The United States Probation & Pretrial Services Office ("USPO") issued a Presentence Investigation Report ("PSR") and accompanying Sentencing Recommendation on September 19, 2023.  (Dtk. 36, PSR; Dkt. 35, Sentencing Recommendation.)  The PSR calculated an offense level of 10, and a Criminal History Category of I, resulting in an advisory guideline range of 6 to 12 months.  (PSR at 3.)  The USPO recommended a mid-range guidelines sentence of 10 months.  (Sentencing Recommendation at 2.)  The USPO further recommended a three-year term

of supervised release, restitution in the amount of $3,980, a $200 mandatory special assessment and no fine.

The government does not object to the PSR's findings or guidelines calculation, and concurs with USPO's sentencing recommendation, except that the government believes the Court should impose a five-year period of supervised release, which defendant has agreed is appropriate here.  (Plea Agreement ¶ 17.)

**III. STATEMENT OF FACTS**

On March 1, 2023, law enforcement arrested defendant at a Citibank ATM in Los Angeles after he made fraudulent withdrawals of cash from victims' EBT accounts.  Defendant was able to do so because he, himself or working in concert with others whose identities are unknown to the government, had obtained victims' EBT account information and PINs by placing "skimming" devices and cameras on ATMs or other point-of-sale devices to surreptitiously capture or record victims' account information and PINs.  Defendant, himself or working in concert with others unknown to the government, then "cloned" the account information captured by the skimming devices onto debit, credit or gift cards by altering the account information on those cards' magnetic stripes.  Defendant then utilized these cloned cards, together with the surreptitiously captured PINs, to withdraw funds from victims' EBT accounts.

On March 1, 2023, defendant withdrew a total of $3,980 in funds from victims' EBT accounts, consisting of:  $980 from victim A.V.'s EBT account, which had a balance of $1,073.08; $1,000 from victim K.C.'s EBT account, which had a balance of $1,073.45; $1,000 from victim G.B.'s EBT account, which had a balance of $1,113.42; and $1,000 from victim J.H.'s EBT account, which had a balance of

$1,152.46. In total, defendant obtained $3,980 in funds and intended to obtain $4,412.41 in funds from at least four victims. (The difference between the funds withdrawn by defendant and the intended loss represents the balance remaining on the accounts that defendant did not withdraw.)

When arrested, Defendant possessed four debit, credit or gift cards that had been cloned with victims' account information. All four cards had stickers on them bearing each victim's EBT account balance and PIN. Defendant used this information to make the four withdrawals.

Defendant possessed $4,008 in cash at the time of his arrest.

In the Plea Agreement, the government and defendant have agreed that the following represents an appropriate sentence: a custodial sentence no lower than the low-end of the Guidelines range calculated by the Court, provided that the resulting sentence is at least six months imprisonment; a five-year period of supervised release with conditions to be fixed by the Court; $3,980 restitution; no fine; and a $200 special assessment.

(Plea Agreement ¶¶ 13, 17; PSR ¶¶ 13-22.)

**IV.   ARGUMENT**

The Court must impose a sentence that is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a). The Court shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). In addition, the Court should fashion a sentence that reflects the seriousness of the offense, promotes respect for the rule of law, provides just punishment for the offense, affords adequate deterrence to criminal

5

conduct, and protects the public from future crimes of the defendant, among other considerations.  18 U.S.C. § 3553(a)(2).  The sentence recommended by the government and USPO will serve these goals.

### A. Nature and Circumstances of the Offense

The Court must consider the nature, circumstances, and seriousness of the offense.  18 U.S.C. §§ 3553(a)(1), (a)(2)(A). Here, a mid-range guidelines sentence reflects the seriousness of defendant's crime.  Defendant entered the United States without authorization in 2022 for the apparent purpose of committing fraud. Although defendant states that he came to the United States "to seek better opportunities," there is no indication he ever sought employment despite having at least one highly marketable skill, as is evidenced by his certification in computer programming.  (PSR ¶¶ 764, 4-75.)  Rather, defendant almost immediately began participating in a scheme that targeted the most indigent and financially vulnerable in our society – recipients of food stamps and related benefits for low-income Californians – for his own enrichment.  In doing so, defendant deprived individual victims of funds they expected to receive and depended on to meet their basic needs.

Defendant's crime was far from victimless.  While victims were eventually reimbursed for their losses by the state, in the meantime, Victim A.V. was unable to pay for rent and groceries for herself and her child.  As a result, both became homeless and had to relocate to a homeless shelter.  (PSR ¶ 22.)  Victim K.C. was also unable to pay for groceries and other living expenses, and the fraud impacted her children's education as she was unable to pay for internet access, rendering her children unable to complete their schoolwork.  (Id.) The impact of defendant's criminal conduct was far-reaching.

6

A mid-range guidelines sentence will account for defendant's culpability in coming to the United States for the apparent purpose of defrauding the indigent, and will reflect the serious impact his crimes had on multiple victims' lives.

### B. Need for Deterrence and to Promote Respect for the Law

A mid-range, ten-month sentence is also warranted to promote deterrence against individuals committing EBT fraud.  Further, Defendant traveled to this country from Romania for the apparent purpose of participating in a sophisticated and organized scheme to steal public funds intended for indigent Californians.  A mid-range custodial sentence is necessary to impart the seriousness of the offense to defendant, to others similarly situated to him considering a similar course of conduct, and to the general public.

### C. Need to Avoid Unwarranted Disparities

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants.  One way of doing so is to sentence defendants within the guidelines range. See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").  The parties' agreed-upon sentence falls within the Guidelines and thus avoids an unwarranted disparity with similarly situated defendants.

### D. There Is No Basis for a Minor Role Reduction

There is no basis for the Court to grant a minor role reduction to defendant. Defendant's argument that he "was clearly among the lower-rung participants" in the fraudulent scheme at issue here is based on nothing more than defense counsel's bare assertion. (Dkt. No. 34 at 5.) Defendant offers no competent evidence regarding his role in the fraudulent scheme from which the Court could draw that conclusion.

On the contrary, the uncontroverted facts rebut defendant's argument. In the Plea Agreement, defendant admits that he, working on his own or in concert with others, skimmed victims' EBT account information and PINs by placing skimming devices and cameras on ATMs and other point-of-sale devices. (Plea Agreement ¶ 17.) Defendant admits that he then cloned victims' captured account and PIN information onto other cards for the purpose of withdrawing funds from their EBT accounts. (Id.) Defendant admits that he knew that the EBT accounts did not belong to him and that he was not authorized to access them. (Id.) This is textbook bank fraud and unauthorized use of unauthorized access devices, and these facts do not come close to demonstrating that defendant is "substantially less culpable than the average participant." United States v. Dominguez-Caicedo, 40 F.4th 938, 960 (9th Cir. 2022). Tellingly, defendant provides no legal authority supporting a minor role reduction on similar facts.

Further, to the extent defendant grounds his argument for a minor role reduction in the relatively low loss amount here, that is already accounted for under the guidelines as the loss amount here did not trigger any increase in his offense level. The Court should decline to reduce defendant's offense level on this basis.

### E. Defendant Should Serve Five Years of Supervised Release

In addition to a mid-range custodial sentence, the Court should impose the parties' agreed-upon five-year term of supervised release. (Plea Agreement ¶ 17.)

A five-year term of supervised release would provide an "added measure of deterrence and protection" that is warranted under the facts of this case. See USSG § 5D1.1, comment. (n.5). Such a term of supervised release would effectively protect the public, including indigent Californians, from similar fraudulent conduct by defendant in the future. Indeed, given defendant's immigration status, he is likely to be deported at the conclusion of his sentence. There would be no greater deprivation of liberty than necessary, and no undue expenditure of Probation Office resources, because there would be no reporting requirement for defendant unless he actually returned, presumably illegally, to the United States once again.

A five-year term of supervised release is thus appropriate to effectively protect the public from any of defendant's future crimes.

### F. Defendant Should Pay $3,980 in Restitution

In the plea agreement, defendant agreed to make full restitution in the amount of $3,980. (Plea Agreement ¶ 17.) The USPO agrees that this restitution figure is appropriate and should be paid to the California Department of Social Services, as the individual victims have since been made whole by that agency. (Sentencing Recommendation at 1.)

## V. CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court sentence defendant to a mid-range Guidelines term of ten months' imprisonment; a five-year term of

9

supervised release; $3,980 in restitution; and the mandatory $200 special assessment.  This sentence is "sufficient, but not greater than necessary, to comply with the purposes enumerated in 18 U.S.C. § 3553(a)(2)."  18 U.S.C. § 3553(a).